THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON PRINGLE,

  Plaintiff,

v.

STANDARD INSURANCE COMPANY,

  Defendant.

Case No. 3:18-cv-05025-RBL

**DEFENDANT STANDARD INSURANCE COMPANY'S TRIAL BRIEF**

**TRIAL DATE:  FEBRUARY 11, 2019**

Defendant Standard Insurance Company ("Standard"), by and through its counsel of record, Jensen Morse Baker PLLC, hereby submits its trial brief in this matter.

## I.    INTRODUCTION

Plaintiff Jason Pringle ("Plaintiff" or "Pringle") challenges Standard's decision to deny long-term disability ("LTD") benefits under Group LTD Policy 648848-B, issued to Pringle's employer, CenturyLink, as the Policyholder ("the Policy").  The LTD Policy is part of an employee welfare benefit plan (the "Plan") governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").

Standard paid Pringle LTD benefits for the entire 12-month "Own Occupation" Period, finding that complications from his diabetic neuropathy rendered him disabled from his own medium-level occupation under the terms of the Plan.  Following the 12-month Own Occupation Period, Pringle had to provide sufficient evidence that he was disabled, not only from his own medium-level occupation, but also from "Any Occupation."  Pringle could not meet this higher

DEFENDANT'S TRIAL BRIEF- 1
Case No. 3:18-cv-05025-RBL

standard, and Standard denied Pringle's claim for LTD benefits. In brief, Standard determined that Pringle was capable of performing sedentary/light work in the local economy and identified several sedentary/light occupations for which he was qualified. Plaintiff disagrees with Standard's decision, contends that he is also disabled from "Any Occupation" under the terms of the Plan, and seeks LTD benefits under this definition.

The Administrative Record[1] demonstrates that Standard conducted a full and fair review of the medical evidence presented for the claim and that it obtained three independent reviews by board-certified physicians. These reviews concluded that Pringle was not medically precluded from performing sedentary/light work for which he was qualified in the local economy beyond May 18, 2017. Notably, Pringle's own primary care physician, Dr. Raphael Peralta, agreed that, although Pringle was not capable of performing his own medium-level job, he was capable of sedentary work. The Administrative Record also shows that Pringle remained active during the period in question, travelling for months at a time to the Philippines with no medical care, taking a three-week hunting/fishing trip, and admittedly performing activities of daily living without assistance such as driving, shopping, cooking meals, personal hygiene, and taking care of his own finances. Standard's decision to deny benefits was not only reasonable and correct, but also strongly supported by the Administrative Record. Accordingly, Standard requests that this Court uphold Standard's decision denying Plaintiff's claim for LTD benefits under the "Any Occupation" standard beyond May 18, 2017.

---

[1] The Policy/Plan documents (Bates-marked as STND 18-03975-000001-28) and the Administrative Record of the LTD claim (Bates-marked as STND 18-03975-000029-742), have been redacted as required by Fed. R. Civ. P. 5.2 and the Court's Minute Order Setting Trial and Briefing Schedule (Docket No. 10), and are being filed with the Court as attachments to this Trial Brief. Standard is also providing a courtesy copy of the Policy/Plan documents and the Administrative Record to the Court pursuant to LCR 10(e)(9). References to the Policy/Plan documents and the Administrative Record will be made by referring to the Bates numbers in an abbreviated form using the last four Bates numbers, e.g., STND 0001 refers to STND 18-03975-000001.

DEFENDANT'S TRIAL BRIEF- 2
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

## II.    FACTUAL BACKGROUND

**A.    The LTD Plan Provides Disability Benefits for Eligible Employees with Proven Disabilities as Defined by the LTD Policy; After 12 Months of LTD Benefits, Claimant Must Provide Objective Medical Documentation that he is Disabled from "Any Occupation."**

By virtue of his employment with CenturyLink, Plaintiff became a participant in the Plan, which the parties agree is governed by ERISA.  *See* STND 0001-28.  The Plan pays long-term disability ("LTD") benefits to otherwise eligible participants who become "Disabled" under the terms of the Plan after the claimant provides satisfactory Proof of Loss.  STND 0011.  "Proof of Loss" is defined in relevant part as follows:

> Proof of Loss means written proof that you are Disabled and entitled to LTD Benefits.  Proof of Loss must be provided at your expense.
>
> **For Proof of Loss we may require Objective Medical Documentation. Objective Medical Documentation means written documentation of observable, measurable and reproducible findings from examination and supporting laboratory or diagnostic tests, assessment or diagnostic formulation, such as, but not limited to, x-ray reports, elevated blood pressure readings, lab test results, functionality assessments, and psychological testing.**

STND 0021 (emphasis added).

During the Benefit Waiting Period of 52 weeks or the end of the short-term disability ("STD") period (STND 0010), and for the first 12 months following the Benefit Waiting Period, the claimant must be disabled from his "Own Occupation."  STND 0009, 13-14.  "Own Occupation" is defined in relevant part as follows:

> You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder you are unable to perform with reasonable continuity the Material Duties of your Own Occupation.
>
> * * *
>
> Own Occupation means the job you are regularly performing for your Employer when Disability begins.

DEFENDANT'S TRIAL BRIEF- 3
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

> Material Duties means the usual duties you perform in your regular job with your Employer.

STND 0013-14.

After the 12-month Own Occupation Period, the definition of "Disability" changes and the claimant must provide Proof of Loss that he is disabled from "Any Occupation." STND 0009, 13-14. "Any Occupation" is defined in relevant part as follows:

> During the Any Occupation Period you are required to be Disabled from all occupations.

> **You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.**

> **Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the local economy and in which you can be expected to earn at least 60% of your Predisability Earnings within twelve months following your return to work, regardless of whether you are working in that or any other occupation.** Local Economy means the labor market within all of the following:

>   a)   50 miles from the location where you normally performed your Own Occupation;

>   b)   50 miles from any of your place(s) of residence beginning 12 months prior to your date of Disability and extending as long as LTD Benefits are payable;

>                           * * *

> **Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted.** In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

STND 0014.

LTD Benefits end automatically on the date a claimant is no longer Disabled under the terms of the Plan or the date the claimant fails to provide proof of continued Disability and entitlement to LTD Benefits. STND 0016.

DEFENDANT'S TRIAL BRIEF- 4
Case No. 3:18-cv-05025-RBL

**B.  Standard Approves LTD Benefits Under the Own Occupation Standard for Plaintiff's Medium-Level Job.**

Pringle worked for CenturyLink as a Network Technician starting in 1999.  STND 0600-601, 629.  Pringle's responsibilities included installing, maintaining/repairing, and testing residential and small business telecommunication services, which in turn required, *inter alia*, using heavy-duty power equipment (e.g., compressors, pumps, blowers) and performing construction work (e.g., digging holes, placing poles, laying cable and conduit in the ground).  STND 0600-601.  The Work Environment included climbing and working at elevations (e.g., from ladders, poles, lift trucks) exceeding 18 feet, working in confined spaces (e.g., attics, crawl spaces, utility holes), performing strenuous physical activities including, but not limited to: lifting and/or moving objects weighing over 75 pounds, and performing job activities outdoors in different weather conditions (e.g., extreme cold and/or heat, inclement weather).  *Id.*  Based on Pringle's Job Description, **Standard conducted an Own Occupation Review and determined his position to be in the Medium strength range**.[2]  STND 0595-599.

Pringle's last day of work for CenturyLink was on April 12, 2015.[3]  STND 0031.  At that time, he lived in Tacoma.  STND 0031.  After satisfying the Benefit Waiting Period, his LTD benefits under the Own Occupation standard became effective on April 18, 2016.  STND 0031.  On April 23, 2016, Disability Benefits Analyst ("DBA") Jeff Williams approved Pringle's LTD benefits claim under the Own Occupation standard.  STND 0352-356.  DBA Williams explained: "I am approving the LTD claim with a Disability date of 04/13/15, the day following Mr. Pringle's last day worked.  Since that day he's been **unable to perform the Material Duties of his medium-level occupation as a result of diabetic neuropathy**.  The claimant has been

---

[2] The U.S. Department of Labor has developed five physical demand/strength ratings for all occupations: Sedentary, Light, Medium, Heavy, and Very Heavy.  *See* STND 0598 (describing each physical demand/strength rating).

[3] At that time, he was making $64,440 annually.  STND 0629.  Pringle's monthly gross benefit under the terms of the LTD Plan (60% of Predisability Earnings), <u>before any offsets</u>, was therefore $3,222.00.  STND 0009, 17-18, 31.

DEFENDANT'S TRIAL BRIEF- 5
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

precluded from standing, walking and lifting as required of a Data Communications Technician." STND 0274-275 (emphasis added).

DBA Williams' decision that Pringle was disabled from his own medium-level occupation was supported by the following information and documents in the Administrative Record, which also clearly signaled that Pringle was likely not also disabled from any sedentary (or light) work:

### 1. Pringle's Treating Endocrinologist, Dr. Larry D. Stonesifer, Supports Disability from Pringle's Own Medium-Level Occupation but Suggests Pringle Could Perform Light Duty Work.

Leading up to and during the Own Occupation Period, Pringle regularly saw his treating endocrinologist, Dr. Stonesifer, for his Type 1 diabetes and diabetic neuropathy.  The notes from these visits show that Dr. Stonesifer was supportive of Pringle's claim for disability from his own medium-level occupation, but suggest that he believed Pringle capable of light duty work:

- On August 23, 2014, Dr. Stonesifer noted that Pringle was "doing relatively well" but added: "He has injured his left shoulder again.[4]  He works as a lineman for Century Link, works on telephone poles, as well as going in the manholes and digging, etc."  Pringle's physical exam was normal, he had no edema, and his neurological exam was intact, but Dr. Stonesifer worried that Pringle could not continue in his physically-demanding job: "**I am not sure he is going to be able to continue the strenuous kind of work that he is doing now, might need to be on lighter duty**."  STND 0090 (emphasis added).

---

[4] The Administrative Record contains records showing a history of injuries to Pringle's left shoulder and both knees.  *See* STND 0095-96 & 99-101 (MRI of left shoulder shows complete pectoralis major muscle tear from a "lifting injury" while bench pressing, which is repaired via surgery on 5/11/12, and results in mild to moderate degenerative joint disease in that left shoulder); STND 0091-94 (12/7/12 MRI of right knee shows no fracture or stress fracture but moderate to severe lateral compartment osteoarthritis/chondrosis and mild to moderate medial compartment osteoarthritis/chondrosis); STND 0097-98 (MRI of left knee shows grade 2 to grade 3 sprain of proximal medial collateral ligament on 5/21/13).

DEFENDANT'S TRIAL BRIEF- 6
Case No. 3:18-cv-05025-RBL

- A few weeks later, on September 17, 2014, Dr. Stonesifer restated his concern for Pringle continuing in his physically-demanding job:  "**His job is physically demanding** and he has had both high and low blood sugars.  He is a line worker both working underground manholes and on telephone holes [sic]. He does always wear safety gear." Dr. Stonesifer noted that Pringle was in **"no acute distress"** and his physical exam was otherwise unremarkable, with no edema, although he noted that Pringle self-reported symptoms of diabetic neuropathy.  STND 0087-89 (emphasis added).

- Just after Pringle's last day of work, on April 15, 2015, Dr. Stonesifer reported that Pringle was "not doing well" but connected it to his pending divorce and depression[5] and not to his diabetes.  His physical exam was unremarkable, with no edema, and his neurological exam was intact.  Dr. Stonesifer noted that Pringle's Type 1 diabetes was in "poor control" but added that his **diabetic neuropathy was "less problematic today."** STND 0085-86 (emphasis added).

- A few months later, on July 7, 2015, Dr. Stonesifer reported that Pringle was "not feeling very well" and applying for disability.  Dr. Stonesifer noted: "He does have significant diabetic neuropathy that interferes with **his** work." Dr. Stonesifer also noted that Pringle self-reported that his diabetic neuropathy was "worsening to the point he does not think he can work." However, his physical exam was unremarkable, he had no edema, and his neurological exam was intact.  STND 0084.

- On July 18, 2015, Dr. Stonesifer saw Pringle again following an incident where Pringle hit his right lower leg and was concerned that the wound (from a resulting leg ulcer) may

---

[5] The Administrative Record strongly suggests that Pringle's initial departure from work may have been prompted, at least in part, by his divorce and associated depression.  Pringle started seeing a therapist, Dr. Dwight Randolph, for his depression (STND 0085-86, 132-133), and visited his primary care physician Dr. Douglas Attig on 4/20/15 and 5/11/15 for antidepressants and anti-anxiety medications (STND 0220-222).  His wife filed for divorce on July 20, 2015. STND 0484.  Pringle does not, however, appear to be claiming that he is currently disabled due to any mental health concerns.

DEFENDANT'S TRIAL BRIEF- 7
Case No. 3:18-cv-05025-RBL

be serious.  Pringle's physical exam was unremarkable, he had no edema noted, and his neurological exam was intact.  Dr. Stonesifer also specifically noted that proprioception, vibration, and light touch were all intact.  STND 0082-83.

- On September 3, 2015, Dr. Stonesifer reported that Pringle's exam showed Pringle was "lethargic" but "**in no acute distress**."  His physical exam was otherwise unremarkable, with no edema, and his neurological exam was intact.  His leg ulcer was healing. STND 0080-81 (emphasis added).  Dr. Stonesifer noted diabetic neuropathy with social disability but did not provide any objective medical testing to support this comment. STND 0080-81.

- On September 16, 2015, Dr. Stonesifer noted that Pringle was applying for LTD. Dr. Stonesifer's physical exam of Pringle was unremarkable, with no edema and the neurological exam was intact.  Dr. Stonesifer also specifically noted that proprioception, vibration, and light touch were all intact.  Dr. Stonesifer reported Pringle's self-reported symptoms as follows:  "He does not think he is able to work. He does have type 1 diabetes with significant neuropathy, also when his blood sugars are low he sometimes does not realize it. He complains of numbness in his hands, in his feet, pain in his legs, difficulty standing. He has had surgery on his knees and his shoulders and he has significant pain. **He works as a technician for CenturyLink, but needs to work in small places, in manholes and he finds it impossible now to continue to work his job."**  STND 0079.

- On December 8, 2015, Dr. Stonesifer noted self-reports of "diffuse body pain, joint pain, shoulder pain and weight gain," but Pringle's physical exam was unremarkable, with no edema, and his neurological exam was intact.  STND 0078.

- On December 22, 2015, Pringle brought an Attending Physician Statement ("APS") form for Dr. Stonesifer to fill out related to his disability claim.  Dr. Stonesifer noted: **"he has worked for the telephone company and actually climbs telephone pools and in basements and has significant difficulty because of severe diabetic neuropathy functioning in his job."**  STND 0088 (emphasis added).  His physical exam was again

DEFENDANT'S TRIAL BRIEF- 8
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

unremarkable, with no edema, and his neurological exam was intact.   STND 0088. Dr. Stonesifer also specifically noted that his distal sensation was intact.  *Id.*

- The following day, December 23, 2015, Dr. Stonesifer completed the APS for Pringle's disability claim.  Dr. Stonesifer identified Type 1 diabetes with diabetic neuropathy and hypoglycemia as Pringle's primary diagnoses with symptoms of pain in leg, numbness in feet, and fatigue.  Dr. Stonesifer added: **"He cannot tell when his blood sugar is low and is at risk of falling off poles, etc."  Dr. Stonesifer provided restrictions and limitations related to standing (no more than ½ hour) and walking (not very long). His shoulder surgeries limited motion (presumably in his left shoulder).  Pringle did not, however, have any driving restrictions, sitting restrictions, or any noted restrictions with finger manipulation.**  Dr. Stonesifer opined that Pringle could not return to work and was "probably permanently disabled due to diabetic condition." STND 0120-121.  Taken in context, Dr. Stonesifer's APS appears to opine on Pringle's disability from his own medium-level occupation, not from any occupation.

- On April 19, 2016, Dr. Stonesifer conducted yet another physical exam with unremarkable findings, no edema, and a neurological exam that was intact.  STND 0119.

### 2. Pringle's Primary Care Physician, Dr. Douglas Attig, Provides Unsupported Opinion on His Way Out the Door to Retirement.

Dr. Attig treated Pringle for depression and anxiety in April and May of 2015, with no mention of pain or diabetic neuropathy.  STND 0220-222.  On July 7, 2015, Dr. Attig, who was retiring, had a final office visit with Pringle to discuss his application for disability benefits. Dr. Attig opined on his way to retirement, and without any supporting objective test results: "I have thought for years that he should apply. He has had multiple injuries with 4 or 5 knee surgeries, arm surgeries and shoulder procedure. He still has a torn right ACL. If he continues to work in his present job or any other, he will no doubt re-injure himself or hurt someone else. This disability is permanent, as these conditions will not resolve."  STND 0127.  Notably, Dr. Attig did not provide any opinion on whether Pringle could perform sedentary or light work.

DEFENDANT'S TRIAL BRIEF- 9
Case No. 3:18-cv-05025-RBL

### 3.     Pringle's New Primary Care Physician, Dr. Raphael Peralta, Fails to Opine on Work Functionality.

On March 23, 2016, Pringle had an initial visit with Dr. Peralta to establish care.  Dr. Peralta noted that Pringle had Type 1 diabetes, depression, anxiety, low testosterone, and insomnia. Dr. Peralta also noted peripheral neuropathy in both lower extremities and right shoulder pain, but **he noted no weakness or numbness in either upper extremity.**  Pringle's exam was otherwise unremarkable.  STND 0167-169.

### 4.     Pringle's Self-Reported Limitations Preclude Medium-Level Work but Not Sedentary Employment.

DBA Williams spoke with Pringle on March 30, 2016.  Pringle identified his most severe problem as diabetic neuropathy in his lower extremities, right knee pain, and bilateral shoulder pain.  Pringle admitted that he did not use an ambulatory aid and could drive.  **Pringle believed he was limited to no more than 30 to 60 minutes of standing or walking on a good day, but did not identify any limitations to sitting during a work day.**  STND 0548-549.

## C.     Standard Conducts Year-Long "Any Occupation" Review and Determines Plaintiff is Capable of Sedentary/Light Employment.

On April 23, 2016, in a separate letter, DBA Williams advised Pringle that the definition of Disability for his LTD benefits claim was set to change after 12 months from the "Own Occupation" definition to the "Any Occupation" definition.  STND 0450-451.  Standard advised Pringle that it would conduct an evaluation of Pringle's eligibility for LTD benefits under the Any Occupation standard, but that Pringle would continue to receive LTD benefits until Standard made its decision (i.e., even if the decision was made after the transition date).  *Id.*  After a full and fair review, DBA George Chan determined Pringle was capable of sedentary/light employment and closed Pringle's LTD claim under the Any Occupation definition in a letter dated May 12, 2017.  STND 0444-449.  The letter explained again that LTD benefits had been extended during the review beyond the Own Occupation Period as a courtesy:

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

LTD benefits first became payable on April 18, 2016. Thus, your Own Occupation Period ended on April 17, 2017. However, LTD benefits were extended beyond the Own Occupation Period, as a courtesy, while we completed our review of your claim for the Any Occupation Period, as set forth in the LTD Policy. Please note that this should not be considered as our acceptance that you satisfied a Definition of Disability beyond that date.

STND 0444-449. As explained further below, Standard's decision to deny LTD benefits under the Any Occupation standard was reasonable and supported by the documents gathered in the administrative record during the year-long evaluation period from April 23, 2016, through May 12, 2017.

1. **Evidence of Pringle's Extensive Travel and Active Lifestyle Strongly Supports his Ability to Perform at Least Sedentary Work.**

Pringle engaged in extensive travel during the year-long evaluation period, staying in the Philippines without medical care for months at a time. On June 8, 2016, Pringle reported to Dr. Peralta that he was traveling to the Philippines later that month and staying for about two months, returning in August. STND 0160-162. Just a couple of months after his return, Pringle reported that he was again travelling to the Philippines on November 24, 2016, and staying for three months, returning on February 25, 2017. STND 0156-159. Pringle also reported that he was "feeling fine" and just needed three months of medications filled for his trip. *Id.* Notably, other than visits to fill up on medications before leaving, there is no record of any medical care for any of his conditions during his lengthy visits to the Philippines.

Pringle also had a relatively active lifestyle during the evaluation period. In his Activities and Capabilities Questionnaire on March 6, 2016, Pringle identified his primary hobbies as fishing and hunting and admitted that he took a 3-week fishing/hunting trip to Eastern Washington in his truck. STND 0254-258; *see also* STND 0132 (LMHC Randolph noted that Pringle was planning to take a 3-week hunting trip); *and* STND 0118 (Dr. Stonesifer filled out permit for fishing and hunting license on 10/18/16. Pringle further admitted that he: (1) drives a truck (but not long distances); (2) shops for food, clothes, and gifts twice a week without assistance; (3) prepares his own meals; and (4) takes care of his own finances. STND 0254-258.

Pringle's lengthy trips to the Philippines, hunting and fishing, and activities of daily living all strongly suggest that he is capable of at least sedentary employment.

### 2. Pringle Visits Dr. Stonesifer for Sole Purpose of Getting Disability Paperwork; Dr. Stonesifer Provides Sitting Restrictions Contrary to His Own Physical Examinations and Prior APS.

In an office visit on October 18, 2016, Dr. Stonesifer noted Pringle's self-report of "significant pain in his legs to the point of being disabled." STND 0118. However, Dr. Stonesifer's exam was unremarkable, with no edema, and Pringle's Type 1 diabetes was noted to be in "better control." *Id.* That same day, Dr. Stonesifer completed a Medical Questionnaire identifying Pringle's primary diagnosis as diabetic neuropathy with pain and numbness. For the first time, and without any change in Pringle's condition or supporting test results, Dr. Stonesifer noted that Pringle could only sit for 2 hours in a work day, declaring him "unable to work." STND 0122-123. Curiously, Dr. Stonesifer appeared to base his newly-minted sitting restrictions on a statement that Pringle's "legs swell if sit & stand too long" even though **none of Dr. Stonesifer's office visits identified any edema in Pringle's legs or feet**. *Id.*; *see also* STND 0078-90, 119 (finding no edema on physical examination in regular visits during two-year period from August 23, 2014 through October 18, 2016). Presumably, this restriction was therefore based on Pringle's undocumented self-reports of edema. Dr. Stonesifer's restriction on sitting is also contrary to Dr. Stonesifer's own APS from December 23, 2015, which identified restrictions to standing and walking, but no restrictions to sitting. STND 0120-121.

### 3. Pringle Visits Treating Physician Dr. Peralta for Sole Purpose of Getting Disability Paperwork: Dr. Peralta Appears to Copy Dr. Stonesifer's Restrictions and Limitations.

On May 11, 2016, Pringle saw Dr. Peralta to follow up on a right shoulder x-ray taken on March 28, 2016 (STND 0166), which showed calcific tendinitis of the rotator cuff. STND 0163-165. Dr. Peralta's exam was otherwise unremarkable. *Id.* Pringle did not see Dr. Peralta again for ten months until March 17, 2017, when he brought in disability paperwork for Dr. Peralta to sign. STND 0152-155. Dr. Peralta completed the Medical Questionnaire identifying a primary

DEFENDANT'S TRIAL BRIEF- 12
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

diagnosis of diabetic neuropathy with constant pain and numbness in both lower extremities. Although Dr. Peralta did not note any issues with Pringle's upper extremities, did not conduct any tests or exams regarding work functionality, and had only seen Pringle three times in the last year, he stated for the first time in response to Pringle's request for disability paperwork that Pringle could only sit for 2 hours, stand for 2 hours, and walk for 1 hour during a work day. STND 0124-125.  Curiously, Dr. Peralta's restrictions and limitations appear to be a virtual carbon copy of those noted earlier by Dr. Stonesifer on the same form.  Compare STND 0124-125 with STND 0122-123.

### 4.     One Visit with Treating Physician Dr. Walter B. Hollow Fails to Identify any Work Restrictions.

On May 3, 2017, Pringle visited Dr. Hollow to establish care.  Dr. Hollow noted a diagnosis of Type 1 diabetes and identified shoulder pain but failed to provide any functional restrictions or limitations or to opine on Pringle's work capacity.  STND 0173-183.

### 5.     Independent Reviewer Determines Pringle is Capable of Sedentary/Light Work; Transferrable Skills Analysis Identifies Sedentary/Light Positions for which Pringle is Qualified.

On March 6, 2017, Pringle completed an Education, Training, and Experience Questionnaire identifying a high school education and a number of marketable skills, including: (1) general skills, such as customer service skills, answering telephones, corresponding (writing/answering letters), resolving conflicts/problems/complaints; and (2) computer skills, such as databases (access, inventory, scheduling programs), email and internet, and home computer use.  STND 590-591.

On May 5, 2017, Dr. Bradley Fancher, Board Certified in Internal Medicine, reviewed the medical records and opined:

> The claimant has chronic right shoulder tendinitis. He likely would be precluded from performing frequent overhead lifting or reaching. The claimant's peripheral neuropathy is poorly described in the medical records we had to review. It appears to be quite stable. There is no indication the claimant has any difficulty with ambulating. The claimant is traveling internationally. Based on the medical records we had to review, **I think it is reasonable to conclude the**

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

**claimant would be capable of performing sedentary or light work on a full-time basis. It seems improbable the claimant would be capable of performing medium-level work given the combination of his chronic right shoulder pain and peripheral neuropathy.**

STND 0185-188 (emphasis added).

Standard then obtained a Transferrable Skills Analysis ("TSA") and Any Occupation Review by Brian Petersen, CRC, Vocational Case Manager.  STND 0569-588.  Based on Pringle's education, training, and experience, the TSA found several positions in the local economy (the Seattle-Tacoma-Bellevue WA Metropolitan Statistical Area) that met the Plan's salary level requirements (meeting or exceeding $3,299.65 per month) and for which Pringle was qualified, including:  (1) the sedentary positions of Maintenance Service Dispatcher, Service Clerk, and Service Dispatcher; and (2) the light-duty position of Network Control Operator  *Id.*

Finding that the medical records failed to show that Pringle could not perform at least sedentary work, and that Pringle was qualified for a number of sedentary occupations, DBA Chan terminated Pringle's LTD benefits under the Any Occupation standard.  STND 0444-449.

**D.     Pringle, Now Represented by Counsel, Provides Additional Records on Appeal, Which Fail to Support Pringle's LTD Benefits Claim Under the Any Occupation Standard.**

Through his current counsel, Pringle appealed Standard's benefits decision in a letter dated September 1, 2017.  STND 0608-615.  Through counsel, Pringle provided additional medical records, mostly from the Social Security Administration.  *Id.*  These documents failed to provide sufficient evidence of Pringle's inability to perform even sedentary work.  Standard then obtained two additional independent medical reviews.  One reviewer conducted a peer-to-peer conference with Pringle's treating physician, Dr. Peralta, who agreed that Pringle could work at a sedentary occupation.  These additional records are discussed further below.

**1.     Dr. Peralta Agrees Pringle Can Perform Sedentary Work.**

On appeal, Standard obtained an independent review of Pringle's records from Dr. Darrin G. Campo, Board Certified in Internal Medicine.  *See* STND 0042-43.  As part of that review

DEFENDANT'S TRIAL BRIEF- 14
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

process, Dr. Campo reached out to Pringle's primary treating physician, Dr. Peralta, and conducted a peer-to-peer call with Dr. Peralta on September 27, 2017. *Id.* Dr. Campo wrote a follow up letter to Peralta confirming their conversation, **which Dr. Peralta signed in agreement on October 6, 2017**:

> During the phone conversation, you confirmed you are the current PCP caring for the claimant. I had discussed the claimant's medical documentation in toto supports an ability to work at a sedentary or light capacity. I had reviewed your APS of 3/17/17 and I indicated that the medical documentation was devoid of electro-diagnostic evidence regarding his neuropathy. I had also noted that Dr. Stonesifer's serial evaluations indicated intact neurologic findings. I had also referenced Dr. Liu's CE, and that this did note decreased sensation in the distal extremities. **When asked about the claimant's capacity for sedentary or light work, you indicated the claimant was a "muscular guy" and that, from your perspective, the claimant could function at a sedentary capacity as people in wheelchairs and who have had amputations are capable of working at a sedentary capacity.**

STND 0042-43 (emphasis added). As noted, Dr. Peralta signed this letter, confirming that he agreed with its contents.

### 2. Additional Office Visit with Dr. Stonesifer Indicates No Change to Pringle's Condition and Fails to Support Disability.

Pringle saw Dr. Stonesifer again on June 6, 2016. His physical exam was unremarkable and there was no edema. STND 0075-76. Dr. Stonesifer gave Pringle a disabled parking permit, indicating that he was still driving. *Id.* Nothing in this office visit shows any change to Pringle's condition that would support his disability from Any Occupation.

### 3. Social Security Administration Evaluation by Dr. Beth Liu and Disability Determination is Not Credible and, at Most, Only "Slightly Relevant."

Pringle will likely attempt to rely heavily on the fact that the Social Security Administration ("SSA") found him disabled on July 25, 2017. STND 0394-401.[6] However, case

---

[6] Standard continues to deny that Plaintiff is entitled to any award of back benefits. However, if the Court were to award Plaintiff back benefits, Plaintiff's Social Security Disability Insurance payments would be an offset to any such award. STND 0017-18. Pringle's receipt of pension disability benefits from CenturyLink would likewise be an offset. *Id.*; *see also* STND 0616.

DEFENDANT'S TRIAL BRIEF- 15
Case No. 3:18-cv-05025-RBL

law is clear that SSA decisions are, at most, only "slightly relevant" to ERISA benefit decisions, because, *inter alia*, (1) the SSA (unlike ERISA) has to give special consideration to the opinions of treating physicians over reviewing physicians; and (2) the administrative record before the SSA is different from that before the Court on an ERISA matter.  *See, e.g., Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Reetz v. Hartford Life and Accid. Ins. Co.*, 296 F. Supp. 3d 1261, 1266-67 (W.D. Wash. 2017).

Likewise, the SSA Physical Disability Evaluation completed by Dr. Beth Liu on March 14, 2016 is not credible and, at most, only "slightly relevant."  STND 0107-117.  First, it is evident from the report, that Dr. Liu was not looking at the same medical records as those in the administrative record before Standard.  STND 0107 (identifying records reviewed by Dr. Liu).  Notably, Dr. Liu, who issued her report in 2017, apparently did not review any records beyond 2006, and did not review any records from Dr. Stonesifer, Dr. Attig, or Dr. Peralta.  *Id.* Dr. Liu could not, therefore, have had any real understanding of Pringle's current medical history or Dr. Peralta's contemporaneous opinion that Pringle could perform sedentary work.

Second, Dr. Liu's conclusions do not match either Pringle's self-reports or her own evaluation.  Pringle reported to Dr. Liu that his diabetic neuropathy made him susceptible to dropping items and falls and further self-reported numbness and tingling in his arms and hands, although no such reports appear anywhere else in the administrative record.  STND 0108. Contrary to these unsupported self-reports, Pringle also reported that he was able to perform the following activities of daily living:

> Mr. Pringle reports he is able to perform activities like shopping, travel without a companion for assistance, ambulate without using a device, walk a block at reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed herself [sic], care for personal hygiene, and sort handle and use paper/files.

STND 108.  Dr. Liu made no attempt to clarify these discrepancies in Pringle's self-reports.

DEFENDANT'S TRIAL BRIEF- 16
Case No. 3:18-cv-05025-RBL

Further, Dr. Liu's physical exam was unremarkable and showed no evidence that Pringle could not sit or use his upper extremities for sedentary work:

> Mr. Pringle arrived on time for the examination. He came to the office by driving himself. He is alert and oriented to 3. He looks his stated age. He is well developed and nourished. He walks into the exam room without using assistive devices. His gait and station are normal without walking assistant device. He has no companions. He is able to dress and undress, get up and down from a chair, and get on and off the exam table. He is able to touch her [sic] thumb to all finger tips. He can make a fist, button and unbutton, and zip and unzip. He is able to pick up coins from a flat surface. He is ambidextrous. He is cooperative. He looks a little tired and sad.

STND 109. Dr. Liu's exam further noted the following: "He is able to grasp, grip and manipulate objects bilaterally. Gripping strength is normal bilaterally"; "There are no muscle spasms, atrophy, or joint deformity seen on exam"; "Carpal tunnel syndrome exam shows negative Phalan's test and Tinel's sign bilaterally." STND 0110. Pringle's neurological exam was likewise normal with the exception of a notation of "decreased sensation to pinprick, temperature, an [sic] vibration in all extremities, right side is more than left." STND 0110. Again, Dr. Liu made no attempt to explain the discrepancies between her unremarkable physical exam and Pringle's self-reported limitations -- e.g., he has numbness and tingling in his hands that causes him to drop items but can still pick up coins from a flat surface and use buttons with no difficulty?

Based on (1) the medical documentation reviewed by Dr. Liu (which was vastly different from the medical documentation in the current administrative record and incredibly outdated), (2) Pringle's self-reports (which were also different than his self-reports to his treating physicians and contradicted by the medical records in the administrative record and Dr. Liu's own physical exam), and (3) Dr. Liu's physical examination, which was largely unremarkable, Dr. Liu provided the following restrictions and limitations:

> Based on Mr. Pringle's current examination today, the medical history reviewed, previous medical record reviewed, and Mr. Pringle's account of his limitations, he is able to lift or carry up to 15 lbs. occasionally. He is able to sit for 60 minutes at one time without interruption and up to 4 hours total in an 8 hour work day.

DEFENDANT'S TRIAL BRIEF- 17
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

He is able to walk for 15 minutes at one time without interruption and up to 1 hours total in an 8 hour work day. He is able to use his hands frequently for some hand activities except overhead reaching, pushing and pulling, and feeling which he may need to avoid performing to prevent him from injury. He is able to perform some postural activities occasionally except for climbing ladders or scaffolds, kneeling, crawling which he may need to avoid perform due to diabetic peripheral neuropathy. Environmental limitations include unprotected heights, moving mechanical parts, extreme cold, extreme heat, and vibrations.

STND 0111.  Simply put, Dr. Liu's findings are not credible.

### 4.    Peer Review Report by Dr. Campo Finds Pringle Capable of Sedentary/Light Employment.

After reviewing the records in their entirety, and speaking with Dr. Peralta, who confirmed his opinion that Pringle was capable of sedentary work, Dr. Campo completed his Peer Review Report on September 29, 2017.  STND 0064-71.  Dr. Campo summarized the pertinent information as follows:

The claimant has a longstanding history of IDDM which has been noted to be brittle with notation of hyperglycemia and hypoglycemia. There is also a history of shoulder and knee infirmities which PMR will evaluate. The claimant is frequently noted to have severe diabetic neuropathy precluding him from work. Serial exams from Dr. Stonesifer indicate intact neurologic findings and there is no electro-diagnostic evidence on the documentation to further quantify this neuropathy. Serial physical exams have been unremarkable save for shoulder and knee ailments. **There is notation of decreased sensation in the upper and lower extremities on SSA CE with normal motor function per Dr. Liu. Dr. Liu's opinion regarding restrictions and limitations, however, is not consistent with the totality of her examination. The claimant's PCP agrees the claimant is capable of sedentary capacity occupation. The totality of the medical documentation provided for review supports an ability to function at a light capacity, leaving aside the claimant's musculoskeletal conditions.**

STND 0067 (emphasis added).  Dr. Campo then concluded:

Strictly on the basis of the claimant's documented medically determinable impairment of diabetes with presumptive neuropathy, the following restrictions and limitations are supported: the claimant is limited to lifting 25 lbs. occasionally and 10 lbs. frequently. Standing and walking is limited to 4 hours aggregate. **Sitting is unrestricted.** Stair-climbing, balancing, stooping, bending, crouching, crawling, kneeling, and squatting are limited to frequently. The

DEFENDANT'S TRIAL BRIEF- 18
Case No. 3:18-cv-05025-RBL

claimant should avoid climbing ropes/ladders/scaffolding altogether. The claimant should avoid concentrated exposure to extremes of temperature (<32F and >85F), humidity, vibration, and hazards. In light of the chronic nature of these medically determinable impairments, these restrictions should be considered permanent, although not preclusive of work at any capacity.

As aforementioned, there is no electro-diagnostic evidence to further quantify the claimant's neuropathy, although his history of uncontrolled diabetes would make this diagnosis reasonable. In light of serial notation of normal motor strength as well, the totality of the medical documentation reviewed supports the restrictions and limitations noted herein.

STND 0067-68 (emphasis added).

### 5. Peer Review Report by Dr. Ephraim K. Brenman Finds Pringle Capable of Sedentary/Light Employment.

Standard also provided the administrative record to Dr. Brenman, Board Certified in Physical Medicine and Rehabilitation, for review.  STND 0054-63.  Dr. Brenman attempted to have a peer-to-peer consult with Dr. Stonesifer but was not successful in reaching him.  STND 0055.  After reviewing the records in their entirety, Dr. Brenman summarized the pertinent information as follows:

This is a 46-year-old male who stopped work on 04/10/16. The claimant reports type 1 diabetes mellitus with neurological symptoms, history of left shoulder surgery a well as history of right knee surgery. MRI of the left knee showed grade 2 to 3 sprain of the proximal MCL, small tear posterior medial meniscus with a screw artifact of the anterior tibial spine. MRI of the left shoulder showed an intact rotator cuff and some glenohumeral joint osteoarthritis with labral tear and AC joint degenerative changes with acute distal edema in the distal clavicle. MRI of the right knee on 12/07/12 showed moderate to severe lateral osteoarthritis, prior partial meniscectomy of the medial and lateral meniscus, intact ligaments, and moderate proximal patellar tendinopathy. MRI of the cervical spine showed moderate to severe left foraminal stenosis and bilateral osteophyte.

STND 0057.  Dr. Brenman then concluded:

**The claimant has no restrictions with sitting or standing. The claimant has no restrictions to fingering, keyboarding, or reaching at desk level.** The claimant is precluded from reaching overhead with the left shoulder. However, there is no restriction with reaching overhead with the right shoulder. The

DEFENDANT'S TRIAL BRIEF- 19
Case No. 3:18-cv-05025-RBL

claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. The claimant can crouch and reach below waist level occasionally and go up and down stairs occasionally. The claimant can stand and walk up to 4 hours a day each, up to 30 minutes at a time, needing a 2-minute break to stop and stretch.

This is due to the fact that the claimant does have moderate to severe lateral osteoarthritis on MRI of the right knee on 12/07/12. The duration of impairment is permanent as the claimant has some glenohumeral joint osteoarthritis, rotator cuff tendonitis of the left shoulder as well as the osteoarthritis of the right knee.

STND 0057 (emphasis added).  Dr. Brenman also explained his disagreement with Dr. Liu's evaluation:

**In my medical opinion, this assessment is not reasonable.**

**There is no documentation to support why the claimant can only sit up to 60 minutes at a time, up to 4 hours a day. The claimant has no lumbar radiculopathy on examination or diagnostic testing. Also, the claimant can lift and carry up to 15 pounds occasionally.** In my opinion, the claimant can lift and carry up to 20 pounds occasionally. The claimant can use his hands except for overhead activities, which I agree with in terms of the left shoulder. I also agree that the claimant cannot kneel or crawl, or climb unprotected heights or scaffolds.

STND 0058 (emphasis added).

Based on the records, including the opinion of treating physician Dr. Peralta that Pringle was capable of sedentary work, and the opinions of two independent reviewers, Kimberly Zedlar, Benefit Review Specialist, upheld Standard's LTD benefits decision and closed Pringle's claim in a letter dated November 29, 2017.  STND 00371-384.  This lawsuit followed.

### III.   ARGUMENT

**A.   On *De Novo* Review of an ERISA Benefits Decision, the Plaintiff Retains the Burden of Proving He is Disabled Under the Terms of the Plan.**

Under ERISA, a plan participant may bring an action to recover plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).  The benefits decision is reviewed by the court *de novo* unless the plan "gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

DEFENDANT'S TRIAL BRIEF- 20
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

Washington's insurance regulations prohibit certain disability insurance policies from containing such discretionary clauses.  *See* WAC 284-96-012.  For purposes of this matter only, and without admitting that any discretionary clauses in the Plan or Policy at issue are prohibited, Standard does not dispute that the Court should review the benefits decision in this matter under a *de novo* standard of review.

### 1.   The Court's Review Should be Limited to the Administrative Record.

When a court reviews a benefits decision *de novo*, it should still limit its review to only those records before the administrator.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999).  Only in those instances where circumstances clearly establish that it is necessary to consider additional evidence for an adequate review will the court consider additional evidence.  *Id.*  This case does not present any such circumstances, and this matter should be decided on the Administrative Record in a bench trial to the Court, where the Court may evaluate the persuasiveness of conflicting testimony in the Administrative Record, and make findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.  *Id.* at 1095; *accord*, *Bunger v. UNUM Life Ins. Co. of Am.*, 196 F. Supp. 3d 1175, 1177-78 (W.D. Wash. 2016).

### 2.   Pringle Retains the Burden of Proving Disability from Any Occupation Through Objective Medical Documentation.

Ninth Circuit law is clear that, when a district court reviews an ERISA benefits decision under a *de novo* standard of review, the claimant retains the burden of proving his entitlement to benefits under the Plan.  *Muniz v. Amec Const. Mgmt., Inc.,* 623 F.3d 1290, 1294-95 (9th Cir. 2010); *Baxter v. MBA Group Ins. Trust Health and Welfare Plan*, 958 F. Supp. 2d 1223, 1227 (W.D. Wash. 2013).  Under a *de novo* standard, the claims administrator's structural conflict of interest is irrelevant.  *Muniz*, 623 F.3d at 1295.  Because the burden to prove entitlement to policy benefits rests on the claimant, the court must examine whether the participant has established, by a preponderance of the evidence, that the record supports the conclusion that he is entitled to benefits under the policy.  *Id.* at 1294, 1296.

DEFENDANT'S TRIAL BRIEF- 21
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

1
2
3
4
5
6

The Plan at issue specifically requires that Pringle prove disability through Objective Medical Documentation that he is unable to perform Any Occupation.  STND 0009, 13-14, 21 (emphasis added).  Proof of a medical diagnosis, alone, is not enough.  *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).  The *Jordan* court explained:

7
8
9
10
11
12

> Medical treatises list medical conditions from amblyopia to zoolognia that do not necessarily prevent people from working.  After a certain age, most people have pain, with or without palpation, in various parts of their body, and they often have other medical conditions.  Sometimes their medical conditions are so severe that they cannot work; sometimes people are able to work despite their conditions; and sometimes people work to distract themselves from their conditions.  Physicians have various criteria, some objective, some not, for evaluating how severe pain is and whether it is so severe as to be disabling.

13

*Id.*

14
15
16
17
18
19
20
21

Standard does not dispute that Pringle was diagnosed with Type 1 diabetes or diabetic neuropathy, but Pringle has failed to provide any Objective Medical Documentation that these conditions make him incapable of sedentary work as required the Plan.  As noted by Dr. Campo, there is no electro-diagnostic evidence to further quantify Plaintiff's neuropathy.  STND 0067-68.  And Plaintiff's own treating physician, Dr. Peralta, agrees that Plaintiff's neuropathy does not prohibit him from sedentary work.  Plaintiff has not, and cannot, meet his heavy burden of providing Objective Medical Documentation of his inability to perform sedentary, or even light, work.

22

### 3.    Plaintiff's Inconsistent Subjective Self-Reports are Not Credible Evidence of an Inability to Perform Sedentary Work.

23
24
25
26
27

Where, as here, objective medical documentation of work functionality is lacking, a court may look to a claimant's subjective reports of pain as support for work functionality.  In assessing whether a claimant's subjective reports of pain rise to the level of a disability, a court may look to any number of objective or subjective indications in the record that the claimant's pain was

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

not so severe as to prevent him from working, such as indications from treating physicians that the claimant was in "no acute distress," was "freely ambulatory," and engaged in activities of daily living such as cooking and shopping for groceries that cut against a determination of severe pain. *Jordan*, 370 F.3d at 880; *accord Page v. Life Ins. Co. of N. Am.*, 305 Fed. Appx. 318, 319 (9th Cir. 2008) ("In reaching its conclusion, the district court did not err in giving little weight to medical opinions regarding Page's physical conditions that were predicated on Page's self-reported symptoms. The district court adopted this approach because it found that her 'subjective complaints are inconsistent and lack credibility' and that '[t]he medical records contained only minor objective findings.' These findings are not clearly erroneous.").

As one district court in the Ninth Circuit concluded, courts should not "blindly accept" a claimant's statements of subjective complaints. Instead, the court should insist that the claimant meet his burden of establishing that he is disabled by providing "sufficient objective evidence of [his] functional limitations or restrictions that render [him] disabled from working." *Perryman v. Provident Life & Acc. Ins. Co.*, 690 F. Supp. 2d 917, 943 (D. Ariz. 2010) (citation omitted).

Here, Plaintiff's subjective reports of pain, and associated claims that his diabetic neuropathy prevents him from even sedentary work, are simply not credible. First, Plaintiff's reports are contrary to the opinion of his own treating physician, Dr. Peralta, who agrees that Plaintiff is capable of sedentary employment. STND 0042-43. Second, Plaintiff's reports are contrary to the office notes of his treating endocrinologist, Dr. Stonesifer, who routinely conducted physical exams that were unremarkable, showed no edema, found plaintiff to be neurologically intact, and in "no acute distress." STND 0078-90, 119. Third, Plaintiff's reports are contrary to his own self-reports of activities. Plaintiff admits that he is quite active, taking long trips overseas, hunting and fishing for weeks at a time, freely ambulating, driving, shopping, cooking, and taking care of his own finances. STND 0118, 132, 156-162, 254-258. Plaintiff's inconsistent and incredible subjective complaints, and the minor objective findings in Plaintiff's medical records, are not sufficient to overcome the overwhelming objective and subjective evidence of Plaintiff's ability to perform sedentary work. *Page*, 305 Fed. Appx. at 319.

DEFENDANT'S TRIAL BRIEF- 23
Case No. 3:18-cv-05025-RBL

**4.      The Court May Accept the Opinions of the Independent Reviewers Over the Opinions of the SSA and Treating Physicians.**

Ninth Circuit case law is also clear that, under ERISA, unlike in Social Security Disability matters, a treating physician's opinion is not entitled to any special weight in an administrator's benefits determination and can be rejected on the basis of reliable evidence. *Muniz*, 623 F.3d at 1297, *citing Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Accordingly, the Court does not need to give special consideration to the opinion of a treating physician over a reviewing physician. *See, e.g., Jordan*, 370 F.3d at 879-80 (upholding plan administrator's decision in accepting opinion of "reviewing physician" over opinion of plaintiff's treating physicians). Further, an SSA decision is, at most, only "somewhat relevant" in an ERISA disability benefits decision. *Reetz v. Hartford Life and Accid. Ins. Co.*, 296 F. Supp. 3d 1261, 1266-67 (W.D. Wash. 2017) (finding SSA decision would likely be only "somewhat relevant" to *de novo* review of Hartford's disability determination under the Plan, because the Court would be analyzing a different record than the one the SSA reviewed).

In the present case, the Court should accept the well-reasoned opinions of the three independent reviewers, Drs. Fancher (Internal Medicine), Campo (Internal Medicine), and Brenman (Physical Medicine and Rehabilitation), all of whom found Plaintiff capable of at least sedentary employment. These opinions are also consistent with the opinion of Plaintiff's own treating physician, Dr. Peralta, who agreed on October 6, 2017, that Plaintiff is capable of at least sedentary work. Dr. Peralta's prior opinion on March 17, 2017, which was really a carbon copy of Dr. Stonesifer's prior APS, should also therefore be ignored.

Dr. Stonesifer's October 18, 2016 opinion that Plaintiff could only sit for 2 hours in a work day and is "unable to work" is simply not credible. First, it is contrary to his own APS from December 23, 2015, which makes no mention of any sitting restrictions, even though his own medical records show no change in Plaintiff's condition between the two opinions. Second, Dr. Stonesifer's opinion on Plaintiff's work functionality is not supported by any objective medical tests or exams. On the contrary, all of his physical examinations over the prior two years

DEFENDANT'S TRIAL BRIEF- 24
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

were unremarkable.  Third, Dr. Stonesifer's opinion that Pringle could not sit for more than 2 hours appears to be based entirely on Pringle's self-report of leg and foot swelling from sitting, which is directly contrary to Dr. Stonesifer's own regular physical exams showing no edema over the past two years.  Fourth, Dr. Stonesifer's opinion is contradicted by Dr. Peralta's later opinion (in October 2017) that Pringle is capable of sedentary work.

Likewise, Dr. Liu's March 14, 2016 opinion that Plaintiff can only sit for 60 minutes at one time up to 4 hours in a work day, on which the SSA's favorable decision is based, is not credible.  First, Dr. Liu did not look at any medical records beyond 2006 (and did not, therefore, have any of Dr. Stonesifer's, Dr. Attig's, or Dr. Peralta's records or opinions).  Second, Dr. Liu's opinion is contrary to her own physical examination of Pringle, which was largely unremarkable, as well as Pringle's own self-reported activities (hunting, fishing, driving his truck to Eastern Washington, taking multiple long trips to the Philippines, etc.).

Finally, Dr. Attig's rushed opinion on July 6, 2015, on the way out the door to retirement, which is not based on any objective texts or exams, or even on any reported subjective complaints by Plaintiff, is not credible evidence that Plaintiff cannot perform sedentary work.  If anything, it is evidence that Plaintiff cannot perform his medium-level occupation, which Standard does not dispute.

**B.**     **The Administrative Record Supports Standard's Denial of LTD Benefits.**

Pringle had to submit sufficient evidence to Standard that he was unable to perform the duties of Any Occupation because of his diabetic neuropathy.  Pringle has not and cannot meet his heavy burden.

In short, the Administrative Record demonstrates that Pringle had an ample opportunity to submit evidence in support of his claim during the administrative process and, indeed, was represented by counsel who did submit material to Standard for purposes of the appeal.

Standard agreed that Pringle was disabled from his Own Occupation and paid him LTD benefits for the 12-month Own Occupation Period under the Plan (and for a brief period into the Any Occupation Period while Standard conducted its review).

DEFENDANT'S TRIAL BRIEF- 25
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

There is, however, insufficient evidence to prove that Pringle was disabled from performing sedentary, or even light, work in the reasonable occupations identified by Standard in the TSA.  Pringle's physicians have not clearly and consistently opined that he cannot physically perform sedentary work.  On the contrary, Pringle's treating primary care physician, Dr. Peralta, agrees that Pringle can perform sedentary work.  The thorough and careful opinions from the three reviewing physicians stating that Pringle was not disabled from Any Occupation demonstrate that the decision to deny benefits was reasonable and correct.  Standard's decision following full and fair review was reasonable and correct, and Standard's benefits decision should be upheld.

## IV.    CONCLUSION

Standard conducted a full and fair review of the records from all of Pringle's treating physicians as well as all test results submitted in conjunction with the claim.  Not only did Standard carefully consider the opinions of Pringle's treating physicians, but it also submitted the record to three independent board-certified reviewing physicians to obtain their reasoned opinions as to whether Pringle had any restrictions or limitations that would prevent him from performing sedentary work in a reasonable occupation identified by the TSA.

Based on its review of the entire Administrative Record, Standard acknowledged that Pringle had certain restrictions and limitations (which, for example, prevented him from performing his own medium-level occupation), but determined that Pringle had not established that he was disabled from performing sedentary work in the reasonable occupations identified for him.

The applicable law does not require that Standard grant any deference to treating physicians, and the more reasoned and complete opinions of the independent reviewers, as well as the opinion of treating physician Dr. Peralta, support the conclusion that Pringle was not physically precluded from performing the sedentary duties of a reasonable occupation.

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE: 206.682.1550

1       Accordingly, for the foregoing reasons and authority, Standard submits that it is entitled

2   to judgment in favor of Plaintiff's claims.

3       DATED: January 14, 2019

4

5

6                                 JENSEN MORSE BAKER PLLC

7                                 By *s/ Sarah E. Swale*

8                                     Steven D. Jensen, WSBA No. 26495

                                  Sarah E. Swale, WSBA No. 29626

9                                 Attorneys for Defendant Standard Insurance

                              Company

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S TRIAL BRIEF- 27
Case No. 3:18-cv-05025-RBL

1

## **CERTIFICATE OF SERVICE**

2

3

Pursuant to RCW 9A.72.085, the undersigned certifies under penalty of perjury under the

laws of the State of Washington, that on the 14th day of January, 2019, the document attached

4

hereto was delivered to the below counsel in the manner indicated.

5

6

Todd R. Renda                            ☒  by CM/ECF
6314 19th St. W., Suite 21              ☐  by Electronic Mail

7

Tacoma, WA  98466-6223                 ☐  by Facsimile Transmission
                                       ☐  by First Class Mail

8

                                       ☐  by Hand Delivery
                                       ☐  by Overnight Delivery

9

10

11

DATED this 14th day of January, 2019.

12

By *s/ Sarah E. Swale*

13

Sarah E. Swale

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S TRIAL BRIEF - 28
Case No. 3:18-cv-05025-RBL

JENSEN MORSE BAKER PLLC
1809 SEVENTH AVENUE, SUITE 410
SEATTLE, WA 98101
PHONE:  206.682.1550