1

2

3

4

5

6

UNITED STATES DISTRICT JUDGE RONALD B. LEIGHTON

7    IN THE UNITED STATES DISTRICT COURT FOR THE
     WESTERN DISTRICT OF WASHINGTON
8                    AT TACOMA

9    JASON PRINGLE,                          NO.  3:18-cv-5025-RBL

10            Plaintiff,                      PLAINTIFF'S TRIAL BRIEF

11   vs.

12   STANDARD INSURANCE COMPANY,

13            Defendant.

14   _____

15                        **I.  JURISDICTION**

16        Jurisdiction is vested in this court by virtue of 29 U.S.C. § 1132(e).  This assertion is

17   supported by the following undisputed facts:  Defendant administered a welfare benefit plan

18   pursuant to the Employee Retirement Income Security Act of 1974.  Answer ¶ 2.1.  Plaintiff

19   made application for disability benefits under the plan and benefits were approved.  Answer ¶

20   3.1.  Standard ultimately closed plaintiff's claim and terminated benefits.  Answer ¶ 3.2.

21                      **II.  PLAINTIFF'S CLAIM**

22        This action involves plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) for Long Term

23   Disability benefits pursuant to the terms of his employer sponsored welfare benefit plan.

24   29 U.S.C. § 1132(a)(1)(B) provides that a participant in a welfare benefit plan is  empowered to

25   bring a civil action " to recover benefits due under the terms of the plan..." "ERISA allows

26   participants or their beneficiaries to bring a civil action 'to recover benefits due to [them] under

27   the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their]

28

PLAINTIFF'S TRIAL BRIEF
PAGE 1

**TODD R. RENDA**
**ATTORNEY AT LAW**
**6314 19th St. West, Suite 21**
**Tacoma, Washington   98466-6223**
**(253) 566-6701**
**FAX (253) 565-0705**

1   rights to future benefits under the terms of the plan.'" *Everhart v. Allmerica Financial Life Ins.*,

2   275 F.3d 751, 753 (9th Cir. 2001).  The administrative record in this case consists of the plan

3   documents STND 18-03975-00001 - STND 18-03975-000742.[1]

## III.  STANDARD OF REVIEW

The plan funds Long Term Disability (LTD) benefits through a policy of insurance issued by defendant, Standard Insurance Company.  AR 1- 28.  The policy number is 648848-B.  AR 2. It was issued on 1/1/15 and replaced a prior policy.  *Ibid*.  The policy was issued in Colorado. AR 8.

Colorado Revised Statutes § 10-3-1116(2) provides in relevant part, as follows:

> An insurance policy, insurance contract, or plan that is issued in this state that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, contract, or plan or to determine eligibility for benefits.

The statute became effective on 8/6/08.  *Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*, 171 F.Supp.3d 1092, 1108 (D.CO 2016).  Colorado courts have held that the statute applies prospectively to any newly issued policy that postdates the effective date and that the statute is not preempted by ERISA.[2]  *Ibid*; *McClenahan v. Metropolitan Life Insurance Company*, 621 F.Supp.2d. 1135, 1139-1142 (D.CO 2009).

In compliance with C.R.S. § 10-3-1116(2), this policy does not contain any provision granting or reserving discretionary authority to defendant.  AR 1- 28.  Where a plan does not confer discretion the default standard of review is *de novo*.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct 948, 103 L.Ed.2d 80 (1989).  Under *de novo* review, "[t]he

---

[1]Plaintiff will cite to the administrative record as "AR" and reference the appropriate page number omitting leading zeros.

[2]This Court has similarly held that WAC 284-96-012 prohibits discretionary clauses in disability insurance policies issued in Washington.  *Mirick v. Prudential Ins. Co. of America*, 100 F.Supp.3d 1094, 1097 (W.D. WA 2015).

**PLAINTIFF'S TRIAL BRIEF**
**PAGE 2**

**TODD R. RENDA**
**ATTORNEY AT LAW**
**6314 19th St. West, Suite 21**
**Tacoma, Washington   98466-6223**
**(253) 566-6701**
**FAX (253) 565-0705**

1  court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied

2  benefits. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (*en banc*).

3  "When conducting a *de novo* review of the record, the court does not give deference to the claim

4  administrator's decision, but rather determines in the first instance if the claimant has adequately

5  established that he or she is disabled under the terms of the plan. *Muniz v. Amec Construction,*

6  *Inc.*, 623 F.3d 1290, 1295 (9th Cir. 2010).  The court gives no deference to the claim

7  administrator's decision with regard to interpretation of plan terms or weighing of the evidence

8  under *de novo* review. *Muniz at* 623 F.3d 1290, 1298, n. 4.  In an ERISA trial under *de novo*

9  review extrinsic evidence outside the administrative record is only admissible under limited

10 circumstances. *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 484 F.3d

11 1211, 1217 (9th Cir. 2007).  In a trial on the administrative record under *de novo* review, "the

12 Court can evaluate the persuasiveness of conflicting testimony and decide which is more likely

13 true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).

14       The doctrine of *contra proferentem* applies to *de novo* review.  The doctrine states that

15 "where an unclear or ambiguous term is used in an insurance policy, the ambiguity must be

16 construed in favor of the insured." *Kunin v. Benefit Trust Life Insurance Company*, 910 F.2d

17 534, 535 (9th Cir. 1990).  "As we acknowledge, *contra proferentem* applies when a plan does not

18 grant a plan administrator discretion to interpret ambiguous plan terms; the doctrine does not

19 apply when a plan grants the administrator discretion to construe its terms." *Day v. AT&T*

20 *Disability Income Plan*, 698 F.3d 1091, 1098 (9th Cir. 2012).

## IV.  APPLICABLE PLAN TERMS

21

22    The applicable terms in the policy governing this dispute are as follows:

23

24                          DEFINITION OF DISABILITY
                                    ***

25    B.  Any Occupation Definition of Disability

26

27    During the Any Occupation Period you are required to be Disabled from all
      Occupations.

28

**TODD R. RENDA**
**ATTORNEY AT LAW**
**6314 19th St. West, Suite 21**
**Tacoma, Washington   98466-6223**
**(253) 566-6701**
**FAX (253) 565-0705**

1
2

You are Disabled form all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

3
4

Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience...

5
6

\*\*\*

7

CLAIMS

8
9

\*\*\*

10

C.      Proof of Loss

11
12

Proof of Loss means written proof that you are disabled and entitled to LTD Benefits.  Proof of Loss must be provided at your expense.

13
14
15
16
17

For Proof of Loss we may require Objective Medical Documentation. Objective Medical Documentation means written documentation of observable, measurable and reproducible findings from examination and supporting laboratory or diagnostic tests, assessment or diagnostic formulation, such as, but not limited to, x-ray reports, elevated blood pressure findings, lab test results, functionality assessments, and psychological testing.

18

**V.  INTERPRETATION OF  PLAN TERMS USING CONTRA PROFERENTEM**

19
20
21
22
23
24
25
26

Under *de novo* review, this Court interprets plan terms "in the first instance." *Muniz v. Amec Construction, Inc.*, 623 F.3d 1290, 1295 (9th Cir. 2010).  Under *contra proferentem* ambiguous terms in a plan are construed against the drafter. *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 942 (9th Cir. 1995).  A plan provision containing an objective medical evidence requirement "must be made clear, plain and conspicuous enough in the policy to negate layman plaintiff's objectively reasonable expectations of coverage." *Moody v. Liberty Life Assur. Co. of Boston*, 595 F.Supp.2d 1090, 1098 (2009).

27
28

To the extent the Proof of Loss provision requires that Pringle prove his case based exclusively on objective medical documentation, it must be construed against Standard as it is

**PLAINTIFF'S TRIAL BRIEF**
**PAGE 4**

**TODD R. RENDA**
**ATTORNEY AT LAW**
**6314 19th St. West, Suite 21**
**Tacoma, Washington   98466-6223**
**(253) 566-6701**
**FAX (253) 565-0705**

ambiguous by its use of the term "may."  This conclusion is bolstered that the fact that Standard

did not rely exclusively on objective evidence in making the determination that Pringle was

initially disabled.  On 4/18/16 a Standard claim manager made a "New Claim Decision," as

follows:

> Medical Information/Expected Duration of Impairment
>
> The claimant documented on his Employees' Statement that he ceased working as of 4/12/15, due to his type I diabetes mellitus with neurological manifestations.  In claimant interview on 3/30/16, the claimant described experiencing neuropathy in his lower extremities, bilateral knee pain, and bilateral shoulder pain.  The claimant reported experiencing numbness and swelling from his knees down into his feet and into some toes.  Mr. Pringle advised that he is required to be propping up his legs while lying on his back, 'most of the day.'  The claimant also reported he is capable of standing approximately 30 to 60 minutes per day, maximum.
>
> ***
>
> CLAIM DECISION
>
> I am approving the LTD claim with a Disability date of 4/13/15, the day following Mr. Pringle's last day worked...  AR 274.

Where a plan administrator requires "more objective evidence of pain to avoid

termination of those benefits" than it did in the "initial award of benefits" the decision to

terminate benefits is undermined.  *Backman v. Unum Life Insurance Company of America*, 191

F.Supp.3d 1053, 1070 (N.D.CA 2016).   Finally, "pain is a completely subjective phenomenon"

and "cannot be objectively verified or measured." *Saffon v. Wells Fargo & Co. Long Term

Disability Plan*, 522 F.3d 863, 873 (9th Cir., 2008).

## VI.  ADMINISTRATIVE HISTORY

Pringle was employed by Century Link as a network technician.  AR 274.  Pringle

applied for and received LTD benefits until expiration of the own occupation period.  AR 444.

On 5/12/17, Standard determined that Pringle did not satisfy the any occupation definition of

disability because he could perform the occupations of Maintenance Service Dispatcher, Service

Clerk, Service Dispatcher, and Network Control Operator.  AR 447-448.  Pringle asked for

review of this determination on 8/31/17 and provided additional documents for review.  AR 392.

PLAINTIFF'S TRIAL BRIEF
PAGE 5

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington  98466-6223
(253) 566-6701
FAX (253) 565-0705

On 11/29/17 Standard affirmed its determination that Pringle did not satisfy the any occupation definition of disability and identified the occupations of Maintenance Service Dispatcher, Service Clerk, and Service Dispatcher[3] as occupations that Pringle could perform.  AR 371, 382.

## VII.  RELEVANT MEDICAL EVIDENCE

**1.      Evidence Relied on by Pringle to Establish Disability**

**A.      Douglas Attig MD**

On 7/7/15 Douglas Attig MD listed Pringle's diagnosis as Diabetes Mellitus with neurological manifestations and opined that Pringle's condition was permanent and would not resolve.  AR 127.  He stated that if Pringle's blood levels go down to 30, "he can't tell."  He stated that "I have thought for years that he should apply [for disability].  He has had multiple injuries with 4 or 5 knee surgeries, arm surgeries and shoulder procedures.  He still has a torn right ACL.  If he continues to work in his present job or any other, he will no doubt re-injure himself or hurt someone else."  AR 127.

**B.      Larry Stonesifer MD**

On 10/18/16  Larry Stonesifer MD, an endocrinologist opined that Pringle's symptoms and primary diagnosis of diabetic neuropathy affected him as follows:  "can't stand for more than 2 hours- legs swell if sit or stand too long."  Dr. Stonesifer opined that Pringle was permanently restricted to sitting or standing more than 2 hours maximum per workday or walking more than 1 hour maximum per workday.  AR 252.  Dr. Stonesifer commented that Pringle "cannot work."  AR 253.  In a chart note on the same date, Dr. Stonesifer explained that Pringle "continues to have significant pain in his legs to the point of being disabled."  AR 224.  Dr. Stonesifer also expressed concern that Pringle could not tell when his blood level is low.  AR 120.  On 12/22/15 Dr. Stonesifer noted, "[n]eurologic exam:  "Decreased proprioception and vibration in lower extremities."  AR 77.

---

[3]Standard found that the previously identified job of Network Control Operator "was no longer appropriate."  AR 382.

PLAINTIFF'S TRIAL BRIEF
PAGE 6

**TODD R. RENDA**
**ATTORNEY AT LAW**
**6314 19th St. West, Suite 21**
**Tacoma, Washington   98466-6223**
**(253) 566-6701**
**FAX (253) 565-0705**

**C.     Beth Liu MD**

Beth Liu MD examined Pringle on 3/14/17 and diagnosed the following relevant diagnoses:  Diabetes Mellitus, Type I (Juvenile); Diabetic peripheral neuropathy with multiple injuries, Diabetic kidney disease (?proteninuria), Multiple joint and ligament pain, likely related to type I diabetes, chronic neck pain, chronic left shoulder pain, s/p left shoulder surgery, s/p bilateral knee surgeries with scars.  AR 110.  Dr. Liu opined that Pringle's "diagnosis is clear. His conditions are chronic and ongoing.  The disability from complication of diabetes is permanent."  *Ibid*.  Dr. Liu opined that Pringle's relevant functional limitations were able to lift or carry up to 15 lbs. occasionally, sit for 60 minutes at a time without interruption up to 4 hours in an 8-hour work day, stand for 20 minutes at one time without interruption and up to 1 hour total in an 8-hour work day.  *Id*.  Bilateral overhead reaching overhead limited to occasional.  AR 114.

**D.     Raphael Peralta MD**

On 3/6/17 Raphael Peralta MD opined that Pringle was limited to sitting 2 hours maximum per day, standing 2 hours maximum per day and walking 1 hour maximum per day on a permanent basis.  AR 236.  Dr. Peralta opined that Pringle "has constant pain and numbness in both lower extremity.  He cannot perform work due to this condition."  *Ibid*.

E.     **ALJ Marilyn Mauer**

On 7/25/17 ALJ Marilyn S. Mauer issued a decision in Pringle's claim for Social Security Disability.  Judge Mauer determined that Pringle's "symptoms are reasonably consistent with the medical evidence."  AR 397.  Judge Mauer found that Pringle's residual functional capacity was lifting 15 occasionally, sit for 1 hour at time up to 4 hours in an 8-hour workday, Stand for 20 minutes at a time up to 1 hour in an 8-hour workday.  Walk for 15 minutes at a time up to a total of 1 hour in an 8-hour workday.  He would be absent at work more than 2 workdays per month. AR 397.  Judge Mauer found, based on vocational testimony that Pringle's "acquired job skills do not transfer to other occupations within the residual functional capacity..."  AR 399.  Based on

PLAINTIFF'S TRIAL BRIEF
PAGE 7

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington  98466-6223
(253) 566-6701
FAX (253) 565-0705

the residual functional capacity, Judge Mauer reported that a vocational expert testified that "given all these factors there are no jobs in the national economy that the individual can perform." AR 400.

A Social Security decision that finds a claimant is unable to engage in any substantial gainful activity constitutes favorable evidence that warrants the court's consideration in an ERISA claim. *Perryman v. Provident Life and Accident Ins. Co.*, 690 F.Supp.2d 917, 946-947 (D. AZ 2010).

**2.       Evidence Relied on by Standard to Rebut Pringle's Evidence**

It is anticipated that Standard will rely on the medical opinions of reviewing physicians, Bradley Fancher MD,  Ephraim K. Brenman DO, and Darrin G. Campo MD to rebut Pringle's evidence of disability.  Each of these physicians reviewed medical records and answered questions posed to them by Standard's claim manager.  The status of these physicians as nonexamining medical reviewers is significant.  "While the Plan does not require a physical exam by non-treating physicians, in this case that choice 'raise[s] questions about the thoroughness and accuracy of the benefits determination[.]' " *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009) (quoting *Bennett v. Kemper Nat'l Services, Inc.*, 514 F3d 547, 554 (6th Cir. 2008).)  "While ERISA does not accord special deference to the opinions of a treating physician, courts generally give greater weight to doctors who have actually examined the claimant versus those who only review the file..." *Backman supra at* 191 F.Supp.3d 1066 (internal citations omitted).  Where nonexamining medical reviewers consider the claimant's medical conditions in isolation, their opinions may be entitled to less weight. *Schramm v. CNA Financial Corp. Insured Group Benefits Program*, 718 F.Supp.2d 1151, 1164 (N.D. CA 2010).

**A.       Bradley Fancher MD**

On 5/4/17 Bradley Fancher MD authored a Physician Consultant Memo.  AR 185-186. Dr. Fancher opined as follows:

PLAINTIFF'S TRIAL BRIEF
PAGE 8

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington  98466-6223
(253) 566-6701
FAX (253) 565-0705

1

2

3

4

5

6

> The claimant has chronic right shoulder tendinitis.  He likely would be precluded from performing frequent overhead lifting or reaching.  The claimant's peripheral neuropathy is poorly described in the medical records we had to review.  It appears to be quite stable.  There is no indication the claimant has any difficulty with ambulating.  The claimant is traveling internationally.  Based on the medical records we had to review, I think it is reasonable to conclude that the claimant would be capable of performing sedentary or light work on a full-time basis.  It seems improbable the claimant would be capable of performing medium-level work given the combination of his chronic right shoulder pain and peripheral neuropathy.  AR 186.

7

8

9

Pringle challenges Dr. Fancher's conclusions that 1) his peripheral neuropathy is poorly described in the medical records; 2) there is no indication that Pringle has difficulty with ambulation; and 3) that Pringle can perform sedentary or light work on a full time basis.

10

**1)     Peripheral neuropathy is poorly described**

11

12

13

14

15

16

17

18

19

20

Dr. Fancher's opinion that Pringle's peripheral neuropathy is poorly described is not well explained.  The diagnosis has been clearly made by multiple examining and nonexamining physicians in this record.[4]  Yet Dr. Fancher makes no attempt to describe why these physicians' opinions are incorrect.  However, Dr. Fancher's description of peripheral neuropathy as "poorly described" is the only criticism he offers to rebut Drs. Attig, Peralta, Stonesifer and Liu's medical opinions regarding Pringle's functional limitations.  Furthermore, Dr. Fancher's statement that the neuropathy is stable is meaningless as stability doesn't describe severity.  It does, however, show inconsistency as his opinion of stability is inconsistent with questioning its existence.  Inconsistency is also shown by Dr. Fancher's last sentence where he opines that medium work is not an option given the combination of right shoulder pain and "peripheral neuropathy."

21

22

23

To the extent that Dr. Fancher means that the diagnosis is unsubstantiated by objective medical evidence, the Court should find that this opinion is not well supported.  Both Drs.

24

25

26

27

[4]On 7/7/15, Douglas Attig MD diagnosed "Diabetes mellitus with neurological manifestations, type 1."  AR 126.  On 12/13/15 Larry Stonesifer MD, the only endocrinologist of record, diagnosed "Type I DM..." and "diabetic nueropathy."  AR 120.  On 3/23/16, Dr. Peralta diagnosed "Diabetic autonomic neuropathy associated with type 1 diabetes mellitus.  AR 169.  On 3/13/17 Dr. Liu diagnosed Diabetic peripheral neuropathy..."  AR 110.  Even Standard's own reviewing physician, Dr. Campo, in referencing peripheral neuropathy opined that "his history of uncontrolled diabetes would make this diagnosis reasonable."  AR 68

28

**PLAINTIFF'S TRIAL BRIEF**
**PAGE 9**

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington   98466-6223
(253) 566-6701
FAX (253) 565-0705

Stonsifer and Liu's clinical examinations demonstrate objective medical findings of peripheral neuropathy.  *See* AR 77, 110, respectively.

**2)      No Indication that Pringle has Difficulty with Ambulation**

Dr. Fancher's statement that there is no indication that Pringle has difficulty with ambulation is also difficult to understand since Drs. Stonesifer, Peralta, and Liu all opined that Pringle had limitations ambulating.  Dr. Fancher's opinion does not explain why he disagrees with these opinions or put forward any substantive basis for the disagreement except to state that peripheral neuropathy is poorly described.  Moreover, Standard's two other reviewing physicians also opined that Pringle has ambulation limitations.  On 9/22/17 Dr. Brenman opined that Pringle can only stand and walk "up to 30 minutes at a time" and "up to 4 hours a day..."  AR 57.  On 9/22/17 Dr. Campo opined that "[s]tanding and walking is limited to 4 hours aggregate."  (AR 68).  Thus, it is clear that the only physician of record to opine that Pringle has no ambulation limitations is Dr. Fancher and his only explanation was nakedly state so.  The Court should find that this opinion is not well supported.

**3)      Pringle can Perform Sedentary or Light Work on a Full Time Basis**

Drs. Stonesifer, Peralta, and Liu all opined that Pringle had limitations in working on a full-time basis since their opinions of Pringle's sitting, standing and walking limitations fall well short of an 8-hour work day.  Dr. Fancher, however, offered no substantive basis for disagreeing with these medical opinions other than to state that Pringle's peripheral neuropathy is poorly described.  As demonstrated above, this reasoning is not well supported or even clearly explained by Dr. Fancher.  This Court should find that the opinion is not well supported.

**B.      Ephraim K. Brenman DO**

On 9/22/17 Dr. Brenman, a physiatrist, reviewed records and authored a peer review report.  AR 54-63.  Dr Brenman was asked by the claims manager to "indicate any diagnosis that cause or contribute to any impairment after May 17, 2017."  AR 72.  In response, Dr. Brenman opined that Pringle had left shoulder and right knee osteoarthritic conditions.  However, he

**PLAINTIFF'S TRIAL BRIEF**
**PAGE 10**

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington  98466-6223
(253) 566-6701
FAX (253) 565-0705

1
2
3
4
5
6

opined with regard to peripheral neuropathy, that "the claimant's peripheral neuropathy is poorly described in this case.  There is no electromyography(EMG) or nerve conduction study to show that the claimant truly has peripheral neuropathy per Dr. Stonesifer's note.  Dr. Stonesifer's note stated that the claimant's pain's etiology was unclear on 12/08/15."  AR 57.  Accordingly, he offered the following workplace restrictions without reference to any diagnosis of peripheral neuropathy:

7
8
9
10

> The claimant has no restrictions with sitting or standing.  The claimant has no restrictions to fingering, keyboarding, or reaching at desk level.  The claimant is precluded frm reaching overhead with the left shoulder.  However, there is no restriction with reaching overhead with the right shoulder.  The claimant can crouch and reach below waist level occasionally and go up and down stairs occasionally.  The claimant can stand and walk up to 4 hours a day up to 30 minutes at a time, needing a 2-minute break to stop and stretch.

11
12
13

> This is due to the fact that the claimant does have moderate to severe lateral osteoarthritis on MRI of the right knee on 12/7/12.  The duration of impairment is permanent as the claimant has some glenohumeral joint osteoarthritis, rotator cuff tendinitis of the left shoulder as well as the osteoarthritis of the right knee.  AR 57.

14
15
16
17
18
19
20

Thus it is clear that Dr. Brenman's opinions were based solely on Pringle's orthopaedic impairments and no consideration was given to Pringle's diabetes or peripheral neuropathy diagnoses.  Accordingly, the Court should find that Dr. Brenman's opinions are of limited significance.  *Schramm v. CNA Financial Corp. Insured Group Benefits Program*, 718 F.Supp.2d 1151, 1164 (N.D. CA 2010) (Where nonexamining medical reviewers view the claimant's medical conditions in isolation, their opinions may be entitled to less weight).

21
22
23
24
25
26
27
28

The claims manager also asked Dr. Brenman to opine on Dr. Liu's limitations.  AR 72.  In response, Dr. Brenman stated that Dr. Liu's opinions lacked support from an orthopaedic standpoint due to no evidence of lumbar radiculapathy.  AR 48.  However, there is no evidence that Dr. Liu limited her opinions of functional limitations to orthopaedic considerations alone.  AR 111.  On the contrary, her opinions were based on her diagnoses of Diabetes Mellitus, Type I (Juvenile); Diabetic peripheral neuropathy with multiple injuries, Diabetic kidney disease (?proteninuria), Multiple joint and ligament pain, likely related to type I diabetes, chronic neck pain, chronic left shoulder pain, s/p left shoulder surgery, s/p bilateral knee surgeries with scars.

PLAINTIFF'S TRIAL BRIEF
PAGE 11

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington  98466-6223
(253) 566-6701
FAX (253) 565-0705

1    AR 110.  Accordingly, the Court should find that Dr. Brenman's criticisms of Dr. Liu's opinions

2    are of limited significance.

3         Finally, the Court should find that Dr. Brenman's reliance on Dr. Stonesifer's opinion

4    that "the etiology of Pringle's pain was unclear on 12/08/15."  Reference to Dr. Stonesifer's

5    12/08/15 chart note shows that Dr. Stonesifer stated that the etiology of Pringle's "chronic pain"

6    was unclear.  AR 78.  However, with regard to Pringle's complaints of pain resulting from his

7    orthopaedic and diabetic neuropathy conditions, the record is clear that Dr. Stonesifer did not

8    believe that the etiology was unclear.  On 6/6/17 Dr. Stonesifer listed Pringle's diagnosis to be

9    "Diabetic neuropathy and numerous painful orthopaedic condition associated with disability..."

10   AR 75.  On 12/22/15 Dr. Stonesifer opined that Pringle had "diabetic neuropathy with

11   disability."  AR 77.  On 10/18/16 Dr. Stonesifer opined that Pringle "continues to have

12   significant pain in his legs to the point of being disabled."  AR 118.  On 10/16/16 Dr. Stonesifer

13   opined that Pringle's "legs swell if sit or stand too long."  AR 252.

14        The Court should find that Dr. Brenman's opinions are not well supported.

15
16   **C.    Darrin G. Campo MD**

17        On 9/22/17 Dr. Campo, an internist, reviewed records and authored a peer review report.

18   AR 64-71.  Dr.  Campo was asked by the claims manager to "indicate any endocrinological

19   diagnoses that cause or contribute to any impairment after May 17, 2017."  AR 72.  In response,

20   Dr. Campo opined that "[e]ndocrinological diagnoses from this date forward supported by the

21   medical documentation include IDDM."  (Insulin Dependent Diabetes Mellitus).  AR 67.

22        With regard to functional limitations resulting from IDDM, Dr. Campo opined, in

23   relevant part, as follows:

24
25        Strictly on the basis of the claimant's documented medically determinable
         impairment of diabetes with presumptive neuropathy, the following restrictions
26        and limitations are supported: the claimant is limited in lifting 25 lbs. occasionally
         and 10 lbs. frequently.  Standing and walking is limited to 4 hours aggregate.
         Sitting is unrestricted.   AR 68.

27
28
PLAINTIFF'S TRIAL BRIEF
PAGE 12

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington  98466-6223
(253) 566-6701
FAX (253) 565-0705

1    Dr. Campo explained the basis of his opinion as follows:

2        The claimant is frequently noted to have severe diabetic neuropathy precluding
3        him from work.  Serial exams from Dr. Stonesifer indicate intact neurologic
         findings and there is no electro-diagnostic evidence on the documentation to
4        quantify this neuropathy...  There is notation of decreased sensation in the upper
         and lower extremity on SSA CE with normal motor function per Dr. Liu.  Dr.
5        Liu's opinion regarding restrictions and limitations; however, is not consistent
         with the totality of her examination.  The claimant's PCP agrees the claimant is
6        capable of a sedentary capacity occupation.  The totality of the medical
         documentation provided for review supports an ability to function at light a light
7        capacity, leaving aside the claimant's musculoskeletal conditions.  AR 67.

8    The Court should find Dr. Campo's opinions not persuasive.  First, the opinions of a

9    reviewing physician that considers a claimant's conditions in isolation is of limited evidentiary

10   value.  *See Schramm* at 718 F.Supp.2d 1151, 1164.  Second, Dr. Campo's insistence on objective

11   medical findings (EMG testing) to support the diagnosis of peripheral neuropathy runs afoul of

12   the proper interpretation of plan terms.  Moreover, Dr. Campo inconsistently concedes that the

13   diagnosis of peripheral neuropathy is "reasonable" given the history of uncontrolled diabetes.

14   AR 68.  Third, Dr. Campo's conclusion that Dr. Stonesifer's serial exams indicate intact

15   neurological findings is inconsistent with Dr. Stonesifer's exam findings of 12/22/15 wherein he

16   noted,  "[n]eurologic exam:  "Decreased proprioception and vibration in lower extremities."  AR

17   77.  Furthermore, as Dr. Campo admits, his conclusion of normal neurological clinical exams is

18   inconsistent with Dr. Liu's exam findings on 3/14/17 "sensory system exam shows decreased

19   sensation to pinprick, temperature and vibration in all extremities, right side is more than left."

20   AR 110.  Fourth, Dr. Campo's criticism of Dr. Liu's conclusions lacks any substantive

21   explanation.  This is problematic since Dr. Campo expressly limits his opinions to Pringle's

22   diabetic condition, but  Dr. Liu did not so limit her opinions.  Fifth, Dr. Campo indicates that his

23   opinions are bolstered because he obtained an opinion from Dr. Peralta that Pringle could

24   perform sedentary work.  AR 43.  But in doing so, Dr. Campo represented to Dr. Peralta that Dr.

25   Stonesifer's serial exams showed intact neurological findings.  AR 43.  This is incorrect, as

26   shown above.  In any event, Dr. Campo stated that he even disagreed with Dr. Peralta as he felt

27   that Pringle was even less restricted and could perform light work.  AR 67.  Sixth, Dr. Campo's

28

**PLAINTIFF'S TRIAL BRIEF**
**PAGE 13**

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington  98466-6223
(253) 566-6701
FAX (253) 565-0705

1  opinions do not take into account Pringle's symptoms of pain that Judge Mauer found to be

2  "reasonably consistent with the medical evidence."  AR 397.  Moreover, Standard initially

3  accepted Pringle's claims of debilitating pain as significant evidence in its determination to grant

4  benefits under the own occupation standard.  AR 274.  The claim file offers no rationale as to

5  why Pringle's pain complaints were not worthy of consideration when it later considered his

6  eligibility under the any occupation standard.

7          The Court should find that Dr. Campo's opinions are not well supported.

8                              **VII.  VOCATIONAL EVIDENCE**

9

10         On 5/8/17 Brian Petersen CRC, a vocational case manager, completed at Transferable

11  Skills Assessment (TSA).  Mr. Petersen concluded that Pringle could perform the jobs of

12  Maintenance Service Dispatcher, Service Clerk, Service Dispatcher, and Network Control

13  Operator.  AR 571-572.  Mr. Peterson was asked to assume that Pringle was "able to perform

14  sedentary or light work full time."  AR 570.  He was not asked to assume a work capacity

15  consistent Dr. Stonesifer or Liu's opinions.

16         A TSA based on mistaken assumptions is not persuasive.  *Perryman supra at*  690

17  F.Supp.2d 917, 953.  The Court should find that Mr. Petersen's TSA analysis is not persuasive

18  evidence that Pringle does not meet the any occupation standard of disability.

19                              **VIII.  CONCLUSION**

20         Under *de novo* review, the Court interprets the plain language of the Plan without giving

21  any deference to the administrator's interpretations or weighing of the evidence.  The Court uses

22  ordinary guides of interpretation set out in the case law when so interpreting language in an

23  insurance policy.  The Court should find after reviewing this record that Pringle is entitled to

24  Long Term Disability benefits under the "any occupation" definition of the Plan.  Pringle's

25  evidence of his inability to perform the any occupation standard has not been rebutted by

26

27  /

28

**PLAINTIFF'S TRIAL BRIEF**
**PAGE 14**

TODD R. RENDA
ATTORNEY AT LAW
6314 19th St. West, Suite 21
Tacoma, Washington  98466-6223
(253) 566-6701
FAX (253) 565-0705

1  Standard.

2  DATED this 14ᵗʰ day of January, 2019.

3

4

5  TODD R. RENDA, ATTORNEY AT LAW

6  s/Todd R. Renda
   Todd R. Renda WSBA# 20779

7  Attorney for Plaintiff
   6314 19ᵗʰ St., West, Ste 21

8  Tacoma WA 98466-6223
   Telephone:  253-566-6701

9  FAX: 253-565-0705

10  toddrenda@msn.com

11

12  **CERTIFICATE OF SERVICE**

13

14  I hereby certify that the foregoing Plaintiff's Trial Brief was electronically filed with the

15  Clerk of Court on January 14, 2019, using the CM/ECF system which automatically notifies each

16  party of record.

17  DATED this 14ᵗʰ day of January, 2019, at Tacoma WA.

18  TODD R. RENDA, ATTORNEY AT LAW

19

20  s/Todd R. Renda
   WSBA# 20779

21  Attorney for plaintiff
   6314 19ᵗʰ St. W., Suite 21

22  Tacoma WA 98466
   Telephone: (253) 566-6701

23  Fax: (253) 565-0705
   E-mail: toddrenda@msn.com

24

25

26

27

28
                                                          **TODD R. RENDA**
                                                        **ATTORNEY AT LAW**
                                                    **6314 19th St. West, Suite 21**
   **PLAINTIFF'S TRIAL BRIEF**                      **Tacoma, Washington   98466-6223**
   **PAGE 15**                                              **(253) 566-6701**
                                                          **FAX (253) 565-0705**