HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON PRINGLE,

             Plaintiff,

v.

STANDARD INSURANCE COMPANY,

             Defendant.

CASE NO. 3:18-CV-05025-RBL

FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. FINDINGS OF FACT

1. CenturyLink established and maintains an employee welfare benefit plan (the Plan) governed by ERISA. AR 5.

2. The Plan funds Long Term Disability (LTD) benefits through a policy of insurance issued by defendant, Standard Insurance Company. AR 1- 28. The policy number is 648848-B. AR 2. It was issued on 1/1/15 and replaced a prior policy. Ibid. The policy was issued in Colorado. AR 8.

3. Pringle was employed by Century Link as a network technician. AR 274. Pringle's last day of work was 4/12/15. Ibid. Pringle applied for and received LTD benefits under the

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 1

Plan until 5/17/17. AR 444. The own occupation period under the Standard policy expired on or about 4/12/17. AR 444.

4. Pringle's initial claim was approved by a claims manager, who wrote the following:

> Medical Information/Expected Duration of Impairment
>
> The claimant documented on his Employees' Statement that he ceased working as of 4/12/15, due to his type I diabetes mellitus with neurological manifestations. In claimant interview on 3/30/16, the claimant described experiencing neuropathy in his lower extremities, bilateral knee pain, and bilateral shoulder pain. The claimant reported experiencing numbness and swelling from his knees down into his feet and into some toes. Mr. Pringle advised that he is required to be propping up his legs while lying on his back, 'most of the day.' The claimant also reported he is capable of standing approximately 30 to 60 minutes per day, maximum.
>
> ***
>
> CLAIM DECISION
>
> I am approving the LTD claim with a Disability date of 4/13/15, the day following Mr. Pringle's last day worked... AR 274.

5. On 5/12/17, Standard determined that Pringle did not satisfy the "any occupation" definition of disability because he could perform the occupations of Maintenance Service Dispatcher, Service Clerk, Service Dispatcher, and Network Control Operator under the any occupation definition of disability under the Standard policy. AR 447-448. Pringle asked for review of this determination on 8/31/17 and provided additional documents for review. AR 392. On 11/29/17 Standard affirmed its determination that Pringle did not satisfy the any occupation definition of disability and identified the occupations of Maintenance Service Dispatcher, Service Clerk, and Service Dispatcher[1] as occupations

---

[1] Standard found that the previously identified job of Network Control Operator "was no longer appropriate." AR 382.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2

1  that Pringle could perform. Each of these occupations is in the sedentary work category
2  as defined by the Department of Labor in the Dictionary of Occupational Titles. AR 371,
3  382.

6. The Standard policy defines disability under the applicable "any occupation" provision as follows:

DEFINITION OF DISABILITY

\*\*\*

B. Any Occupation Definition of Disability

During the Any Occupation Period you are required to be Disabled from all Occupations.

You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.

Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience... AR 14.

7. Proof of Loss under the Standard policy reads as follows:

C. Proof of Loss

Proof of Loss means written proof that you are disabled and entitled to LTD Benefits. Proof of Loss must be provided at your expense.

For Proof of Loss we may require Objective Medical Documentation. Objective Medical Documentation means written documentation of observable, measurable and reproducible findings from examination and supporting laboratory or diagnostic tests, assessment or diagnostic formulation, such as, but not limited to, x-ray reports, elevated blood pressure findings, lab test results, functionality assessments, and psychological testing. AR 21.

8. On 10/8/16, Larry Stonesifer MD, a treating endocrinologist, opined that Pringle could sit 2 hours out of an 8-hour work shift, walk 1 hour out of 8, and stand 2 hours out of 8. Dr. Stonesifer explained that "legs swell if sit or stand too long." AR 253.

9. On 12/22/15, Dr. Stonesifer performed a clinical examination of Pringle which demonstrated "[d]ecreased proprioception and vibration in lower extremities." AR 77.

10. On 3/13/17, Beth Liu MD, evaluated Pringle for a consultative examination for Pringle's Social Security Disability claim. Dr. Liu recorded physical examination findings in pertinent part, as follows: "Sensory system exam shows decreased sensation to pinprick, temperature, and vibration in all extremities, right side is more than left." Ar 110.

11. Dr. Liu opined that Pringle was limited to sitting for 60 minutes at one time without interruption and up to 4 hours total in an 8-hour workday. Standing was limited to 20 minutes at one time without interruption and up to 1 hours total in an 8-hour work day. Walking was limited to 15 minutes at one time without interruption and up to 1 hours total in an 8-hour workday. AR 111.

12. Pringle's primary care physician, Raphael Peralta MD, opined on 3/6/17 that Pringle was limited to sitting 2 hours maximum per day, standing 2 hours maximum per day and walking 1 hour maximum per day on a permanent basis. AR 236. Dr. Peralta opined that Pringle "has constant pain and numbness in both lower extremity. He cannot perform work due to this condition." Ibid.

13. On 7/25/17, ALJ Marilyn S. Mauer issued a decision in Pringle's claim for Social Security Disability. Judge Mauer determined that Pringle's "symptoms are reasonably consistent with the medical evidence." AR 397. Judge Mauer found that Pringle's residual functional capacity was lifting 15 lbs. occasionally, sit for 1 hour at time up to 4 hours in an 8-hour workday, Stand for 20 minutes at a time up to 1 hour in an 8-hour workday. Walk for 15 minutes at a time up to a total of 1 hour in an 8-hour workday. He would be absent at work more than 2 workdays per month. AR 397. Judge Mauer found,

based on vocational testimony, that Pringle's "acquired job skills do not transfer to other occupations within the residual functional capacity..." AR 399.  Based on the residual functional capacity, Judge Mauer reported that a vocational expert testified that "given all these factors there are no jobs in the national economy that the individual can perform." AR 400.

14. On 7/7/15 Douglas Attig MD, another primary care physician, listed Pringle's diagnosis as Diabetes Mellitus with neurological manifestations and opined that Pringle's condition was permanent and would not resolve.  AR 127.  He stated that if Pringle's blood levels go down to 30, "he can't tell."  He stated that "I have thought for years that he should apply [for disability].  He has had multiple injuries with 4 or 5 knee surgeries, arm surgeries and shoulder procedures.  He still has a torn right ACL.  If he continues to work in his present job or any other, he will no doubt re-injure himself or hurt someone else." AR 127.

15. On 5/4/17, Bradley Fancher MD authored a Physician Consultant Memo.  AR 185-186. Dr. Fancher opined as follows:

> The claimant has chronic right shoulder tendinitis.  He likely would be precluded from performing frequent overhead lifting or reaching.  The claimant's peripheral neuropathy is poorly described in the medical records we had to review.  It appears to be quite stable.  There is no indication the claimant has any difficulty with ambulating.  The claimant is traveling internationally.  Based on the medical records we had to review, I think it is reasonable to conclude that the claimant would be capable of performing sedentary or light work on a full-time basis.  It seems improbable the claimant would be capable of performing medium-level work given the combination of his chronic right shoulder pain and peripheral neuropathy.  AR 186.

16. On 9/22/17 Dr. Ephraim K. Brenman, a physiatrist, reviewed records and authored a peer review report.  AR 54-63.  Dr Brenman was asked by the claims manager to "indicate any diagnosis that cause or contribute to any impairment after May 17, 2017." AR 72.  In

response, Dr. Brenman opined that Pringle had left shoulder and right knee osteoarthritic conditions. He opined with regard to peripheral neuropathy, that "the claimant's peripheral neuropathy is poorly described in this case. There is no electromyography (EMG) or nerve conduction study to show that the claimant truly has peripheral neuropathy per Dr. Stonesifer's note. Dr. Stonesifer's note stated that the claimant's pain's etiology was unclear on 12/08/15." AR 57. He offered the following workplace restrictions:

> The claimant has no restrictions with sitting or standing. The claimant has no restrictions to fingering, keyboarding, or reaching at desk level. The claimant is precluded from reaching overhead with the left shoulder. However, there is no restriction with reaching overhead with the right shoulder. The claimant can crouch and reach below waist level occasionally and go up and down stairs occasionally. The claimant can stand and walk up to 4 hours a day up to 30 minutes at a time, needing a 2-minute break to stop and stretch. This is due to the fact that the claimant does have moderate to severe lateral osteoarthritis on MRI of the right knee on 12/7/12. The duration of impairment is permanent as the claimant has some glenohumeral joint osteoarthritis, rotator cuff tendinitis of the left shoulder as well as the osteoarthritis of the right knee. AR 57.

17. On 9/22/17, Dr. Darrin G. Campo, an internist, reviewed records and authored a peer review report. AR 64-71. Dr. Campo was asked by the claims manager to "indicate any endocrinological diagnoses that cause or contribute to any impairment after May 17, 2017." AR 72. In response, Dr. Campo opined that "[e]ndocrinological diagnoses from this date forward supported by the medical documentation include IDDM." (Insulin Dependent Diabetes Mellitus). AR 67. With regard to functional limitations resulting from IDDM, Dr. Campo opined, in relevant part, as follows:

> Strictly on the basis of the claimant's documented medically determinable impairment of diabetes with presumptive neuropathy, the following restrictions and limitations are supported: the claimant is limited in lifting 25 lbs. occasionally and 10 lbs. frequently. Standing and walking is limited to 4 hours aggregate. Sitting is unrestricted. AR 68.

18. On 9/27/17 Dr. Campo contacted Dr. Peralta to discuss his medical opinions. Dr. Campo stated to Dr. Peralta that, "I had reviewed your APS of 3/17/17 and I indicated that the medical documentation was devoid of electro-diagnostic evidence regarding his neuropathy. I had also noted that Dr. Stonesifer's serial evaluations indicated intact neurologic findings... you indicated the claimant was a 'muscular guy' and that, from your perspective, the claimant could function at a sedentary capacity as people in wheelchairs and who have had amputations are capable of working at a sedentary capacity." AR 43. Dr. Peralta signed Dr. Campo's correspondence on 10/6/17. Ibid.

19. The Court has reviewed the administrative record, the briefing and argument of counsel, and conducted a bench trial on February 14, 2019.

20. The Court finds that Pringle has submitted objective medical evidence, as defined in the Standard policy, in support of his inability to perform any occupation.

21. The Court finds that Pringle is disabled to the point that he is not employable in any occupation, as defined in the Standard policy. The Court finds that Pringle meets the "any occupation" definition of disability in the Standard policy.

## II. CONCLUSIONS OF LAW

1. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331 and 1132(e).

2. Defendant, Standard Insurance Company, is an administrator under ERISA and has made adverse benefit decisions in this case which affects Pringle's interest in Long Term Disability benefits.

3. The applicable standard of review is de novo. Under de novo review, the Court grants no deference to the Plan Administrator's interpretation of Plan terms or weighing of the evidence. The Court construes Plan terms consistent with their plain language. Opeta v.

Northwest Airlines Pension Plan for Contract Employees, 488 F.3d 1211, 1220 (9th Cir. 2007). On de novo review, plaintiff has the burden of proof.

4. Under Fed.R.Civ.P. 52, the Court conducted a bench trial on the administrative record on February 14, 2019.

5. The Court concludes that Pringle has carried his burden of proof to met the Proof of Loss provision of the Standard policy.

6. The Court concludes that Pringle has carried his burden of proof that he meets the "any occupation" definition of disability under the Standard policy.

7. Judgment is for Pringle on his claim for Long Term Disability benefits under 28 U.S.C. 1132(a)(1)(B). The Court reverses defendant, Standard Insurance Company's, decision to terminate Pringle's Long Term Disability benefits as of 5/17/17. This case is remanded to defendant, Standard Insurance Company, for calculation of benefits from 5/18/17 onward.

DATED this 25th day of February, 2019

Ronald B. Leighton
United States District Judge